# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN WARNOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16-cv-3900 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Susan E. Cox |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Plaintiff John Warnock ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant," or the "Commissioner") to deny his application for disability benefits. The parties have filed cross-motions for summary judgment. For the following reasons, Plaintiff's motion is granted [dkt. 10], the Commissioner's motion is denied [dkt. 15], and the ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

### I. Procedural History

On September 17, 2012, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (R. 151.) Plaintiff's alleged disability onset date was May 1, 2012. (R. 74.) His initial application was denied on December 20, 2012 and again at the reconsideration stage on March 22, 2013. (R. 73–89.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on April 8, 2013, which was held on January 14, 2014. (R. 107-108, 31–70.) Plaintiff appeared at the hearing with

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

his attorney. (R. 33.) Vocational Expert ("VE") Aimee Mowery was also present and offered testimony. (R. 33.) On November 14, 2014, the ALJ issued a written decision denying Plaintiff's application for DIB. (R. 13–25.) The Appeals Council ("AC") denied review on February 1, 2016, thereby rendering the ALJ's decision as the final decision of the agency. (R. 1-3); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

II.     **Factual Background**

    A.     **Medical and Medical Opinion Evidence**

The medical records indicate that Plaintiff suffers from degenerative disc disease, carpel tunnel syndrome, diabetes, and emphysema/COPD. (*See* R. 16.) Additionally, Plaintiff's medical history includes a right ankle fracture in 2006; Plaintiff reported to his treating physician Dr. Gilbert Egezeke, M.D., as late as 2012 that he experienced "severe pain in both ankles." On March 3, 2014, Plaintiff reported to Dr. Egezeke that he suffered from "body pain all the time in the legs, arms, joints."[2] Plaintiff further testified that his feet and ankles "hurt from the time I get out of bed . . . [t]hey hurt all night long, all day long." (R. 42.)

Plaintiff also has a history of pneumonia, in addition to emphysema/COPD. In September 2013, he was hospitalized for over two weeks with severe pneumonia that was caused by legionella. (R. 359-362.) Following his discharge from the hospital, Plaintiff was on oxygen for several months, through his hearing before the ALJ. (R. 51, 393.) Shortly after the hearing, Plaintiffs stopped using oxygen and reported feeling better. (R. 438.)

Plaintiff's back began bothering him in November 2006, and MRIs show disc bulges at C5-6, foraminal narrowing at C5-6 and C6-7, left lateral disc herniation at L4-5, and an annulus tear. (R. 407-431.) Plaintiff had lumbar epidural injections in August 2008. (R. 422.) Plaintiff

---

[2] Surprisingly, the ALJ wrote of this visit, "the claimant denied joint stiffness, painful joints, swollen joints or weakness," and cited that visit to support his finding that Plaintiff's ankle pain was not a severe impairment. (R. 17.)

2

also attempted to treat his back problems with physical therapy, but chose to discontinue the therapy after it exacerbated his symptoms. (R. 54.) Throughout the following several years, Plaintiff would complain to Dr. Egezeke about pain in his back and shoulder relating to his spinal condition. (*See, e.g.*, R. 257 ("nerve pain in the left shoulder with some weakness…back hurts"), 345 ("constant pain in the shoulder, arms and neck with occasional tingling in the arms"), 435 ("complaints of body pain all the time in the legs, arms, joints"). Plaintiff did not want to take pain medications, but eventually relented approximately 5-6 months before his hearing, and was taking oxycodone for his back and shoulder pain at the time of his hearing before the ALJ. (R. 55, 257.)

Plaintiff testified that he had carpal tunnel syndrome in both hands (worse in his right hand), and that it caused his hands to cramp any time he was performing an activity that required fine motor skills. (R. 39-40.) Dr. Egezeke referred Plaintiff for diagnostic testing in May 2013, which showed that Plaintiff had bilateral median entrapment neuropathy at both wrists compatible with bilateral carpal tunnel syndrome, and bilateral mild ulnar neuropathy at the wrists. (R. 341-343.) At the time of the hearing, Plaintiff was taking Gabapentin for the nerve pain in his shoulders and wrists. (R. 55.)

Regarding Plaintiff's diabetes, he testified that he had his diabetes under control, with the exception of one fainting episode that occurred 8-10 weeks before the hearing. (R. 44.) He stated that he had to check his blood sugar between two and four times every day, but did not claim that the diabetes had any effect otherwise; the medical records corroborate Plaintiff's testimony that his blood sugar levels are under control.

Plaintiff also had thumb surgery after a laceration from a band saw in 2010, but did not appear to have any lasting issues related to that incident. (R. 328-330.) Plaintiff also claims to

have bipolar disorder and depression, but the medical records do not contain any mental health treatment, and Plaintiff testified that he has not received any such treatment. (R. 56.)

The administrative record in this case also contains two consultative examinations ("CEs") for the Bureau of Disability Determination Services. Both CEs were performed by Dr. Roopa Karri, M.D. The first CE took place on December 6, 2012; Dr. Karri reported that Plaintiff was able to get on and off the exam table, could walk 50 feet without support, had normal grip strength, had normal range of motion in his shoulders, elbows, wrists, hips, knees, and ankles, and had mild decreases in his range of motion in his neck and back. (R. 279-282.) The second CE occurred on June 26, 2014, following the hearing before the ALJ at Plaintiff's counsel's request; Dr. Karri reported that Plaintiff was able to get on and off the exam table, could walk 50 feet without support, had difficulty with tandem gait, had normal grip strength, had normal range of motion in his shoulders, elbows, wrists, hips, and knees, had mild decreases in his range of motion in his neck, back, and ankles, and had tenderness in his feet and ankles. (R. 441-446.) Dr. Karri opined that Plaintiff could: a) frequently lift and carry up to 10 pounds and occasionally up to 20 pounds; b) stand and walk for one hour without interruption, and sit for two hours without interruption; and c) sit, stand, and walk for not more than a total of 4 hours each in an eight-hour workday.[3] (R.442-446.)

Dr. Egezeke provided a Medical Assessment of Condition on April 8, 2013 as well. (R. 335.) Dr. Egezeke opined that Plaintiff could stand/walk for two hours in an eight-hour workday, and could sit for two hours in an eight-hour workday. (R. 336.) He further stated that Plaintiff could occasionally lift 20 pounds, frequently lift 15 pounds, could frequently carry 20

---

[3] This is consistent with being able to perform at the light exertional level. The CEs included additional restrictions regarding Plaintiff's use of his hands and feet, postural limitations, and environmental limitations. However, those limitations are not pertinent to this Court's opinion, and will not be listed here.

4

pounds for 200 feet, could not bend, and would be limited in grasping/handling/manipulating objects due to cramping in his hands. (R. 336.)

Finally, the record also contains opinions from State agency medical consultants from Plaintiff's initial disability review, and upon reconsideration. On both occasions, the consultants found that Plaintiff had limitations that were consistent with performing work at the medium exertional level. (R. 77-79, 86-88.)

**B.  The ALJ's Decision**

The ALJ issued a written decision on November 14, 2014, following the five-step analytical process required by 20 C.F.R. § 416.920. (R. 13-25.) As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements for DIB eligibility through March 30, 2016. (R. 15.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 1, 2012. (*Id*.) At step two, the ALJ concluded that Plaintiff's only severe impairment was degenerative disc disease; the ALJ found that all of Plaintiff's other conditions were non-severe. (R. 15-19.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R. 19.) The ALJ next found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform the full range of medium exertional level work with no limitations. (R. 20.) At step four, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a mold polisher. (R.24.) These findings led to the conclusion that Plaintiff was not disabled as defined by the Act. (R. 882.)

In reaching his conclusions, the ALJ gave little weight to Dr. Karri's CE of June 26, 2014. The ALJ reasoned that "the examiner's report appears to be sympathetic to the claimant and based primarily, on the claimant's subjective reports during the examination," and that,

5

despite Plaintiff's complaints of back pain, "claimant last had treatment for the back in 2008 . . . which suggests that the pain was not as severe as alleged by the claimant." (R. 24.) The ALJ did not discuss what weight he gave to Dr. Karri's first CE. As to Dr. Egezeke's treating physician opinion, the ALJ gave that little weight, as well. (R. 23.) According to the ALJ, Dr. Egezeke's opinion was inconsistent with his treatment notes, which indicated "normal back examination." (R. 24.) Conversely, the ALJ gave "significant weight" to the State agency medical consultants' opinions. (R. 22.)

### III.    Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ

denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions…and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

**IV.     The ALJ Failed to Support His Weighing of the Opinion Evidence**

Plaintiff argues that ALJ failed to apply the regulatory factors that govern the weighing of opinion evidence. Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 404.1527(c). Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record.[4] 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d at 870. An ALJ must provide "good reasons" for how much weight he gives to a treating source's medical opinion. See *Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our…decisions for the weight we give your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length,

---

[4] A recent change to the Administration's regulation regarding weighing opinion evidence will eliminate this rule, commonly known as the "treating physician rule," for new claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5848–49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this appeal, however, the prior version of the regulation applies.

7

nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d at 860; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 404.1527(c), 416.927(c). In general, a physician who has personally examined the claimant is given more credence than one who has only reviewed the medical file. 20 C.F.R. § 404.1627(c)(1). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Here, the ALJ chose not to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Egezeke. Leaving aside the issue of whether the ALJ had "good reasons" for giving little weight to Dr. Egezeke's opinion,[5] the ALJ did not discuss any of the aforementioned factors in deciding what weight to give that opinion. The ALJ focused exclusively on the consistency of Dr. Egezeke's opinion with the remainder of the record, but did not discuss Dr. Egezeke's treatment relationship with the Plaintiff, the supportability of the opinion, any specialization the part of Dr. Egezeke, or any other relevant factors. This is a violation of the

---

[5] Frankly, the Court questions whether the ALJ had good reasons for giving little weight to Dr. Egezeke's opinion, but does not reach a conclusion on that issue. However, the Court notes that the ALJ justified his finding by noting that Dr. Egezeke's "own notes indicate normal back examination." (R. 24.) However, the citations listed by the ALJ to support that statement show the following findings, respectively: 1) complaints of back pain and a diagnosis of lumbago (R. 257-258); 2) diagnosis of lumbago (R. 291); 3) diagnosis of spinal stenosis of the lumbar region, and "unspecified musculoskeletal disorders and symptoms referable to neck" (R. at 389-390); 4) subjective complaints of "body pain all the time in the legs, arms, joints," and diagnosis of lumbago, spinal stenosis in the lumbar region, and "unspecified musculoskeletal disorders and symptoms referable to neck." (R. 435-436.) The ALJ further claimed that "claimant last had treatment for the back pain in 2008," but ignored the litany of visits with Dr. Egezeke where Plaintiff presented with complaints of back pain, or the fact that Plaintiff was receiving prescription narcotics for his back pain at the time of his hearing. The ALJ's failure to consider the full scope of the evidence relating to Dr. Egezeke's treatment suggests to the Court that the ALJ's findings may not be supported by substantial evidence, and that he may have engaged in the type of "cherry picking" that courts routinely warn against. *See, e.g.*, *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016). This concern is compounded by the inconsistencies in the ALJ's analysis of Plaintiff's ankle injury, discussed *supra* at in footnote 2. The Court need not reach that issue here, as the ALJ's other failures in weighing opinion evidence clearly necessitate remand.

"treating physician rule," and requires remand. *See Shaevitz v. Colvin*, No. 13 C 1721, 2015 WL 4687460, at *2-3 (N.D. Ill. Aug. 6, 2015). The Court notes that the ALJ must also take these factors into consideration in analyzing any other opinion evidence, which the ALJ also failed to do for the opinions of any of the non-treating physicians in the record. *See* 20 C.F.R. § 404.1527(c) ("We consider all of the following factors in deciding the weight we give to any medical opinion"). Finally, as noted above, the ALJ failed to discuss what weight he assigned to Dr. Karri's first CE, which is likewise a violation of the Social Security regulations. On remand, the ALJ should take care to perform the analysis required by the regulations for all opinion evidence in the record.[6]

**B.     On remand the ALJ should re-evaluate Plaintiff's credibility in light of SSR 16-3p**

Since the ALJ issued his decision in Plaintiff's case, the Social Security Administration has issued new guidance on how an ALJ is to assess a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (effective March 16, 2016), superseding SSR 96-7p. The new guidance eliminates the term "credibility" from its sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, at *1. "While [this] new policy statement does apply to matters on appeal, the Court is also bound by case law concerning the same regulatory process under the 'credibility' analysis of former SSR 96-7p." *Farrar v. Colvin*, No. 14 C 6319, 2016 WL 3538827, at *5 n.3 (N.D. Ill. June 29, 2016). On remand, the ALJ should re-evaluate Plaintiff's subjective symptoms in light of SSR 16-3p.

In particular, the new regulations states:

> In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged

---

[6] Because the Court is remanding on the issue of the ALJ's treatment of opinion evidence, it does not reach other issues raised by Plaintiff in this appeal.

> intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p. In this case, the ALJ made much of Plaintiff's lack of treatment for carpal tunnel syndrome and his supposed failure to treat his back injury after 2008. (R. 16, 21, 23.) On remand, the ALJ should be sure to consider the possible reasons that Plaintiff may not have sought treatment that the ALJ believes are consistent with Plaintiff's subjective complaints.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion is granted [dkt. 10], the Commissioner's motion is denied [dkt. 15], and the ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

**ENTER: 4/19/2017**

**U.S Magistrate Judge, Susan E. Cox**